The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. We will hear argument first in No. 19-2448, Beck v. Wilkie. Mr. Carpenter, please begin when you're ready. Thank you very much, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Corey Beck. The statutory presumption in this case found at 38 U.S.C. 1112A1 is a burden-shifting presumption once triggered. It is undebatable in this case that the presumption was triggered. Once the presumption was triggered, the burden shifted to the Secretary to rebut the presumption in accordance with the provisions of 38 U.S.C. 1113. Because the presumption was triggered and was not rebutted, Mr. Beck was entitled as a matter of law to an award of service connection for his post-service disability from schizophrenia. Mr. Carpenter, this is Judge Hughes. I just want to unstop you and hit on what I think is my key problem with your argument. You say that it is undisputed that the presumption was triggered. Why is that true? It is true, Your Honor, because all that is required is that there be a chronic disease as listed in the statute and regulation that is identified in the record. The fact that there are other diagnoses in the record is not relevant to whether or not this statute was operational based upon the undisputed facts of Mr. Beck's hospitalization immediately following service for a period of more than 21 days for a chronic disease. Let me just interrupt you on that. This is a presumption of service connection statute, right? Oh, I'm sorry, Your Honor, if that is the qualification you're putting on it, I disagree. I believe it is a presumption of service connection because of the uniqueness of this statute. This statute applies... Sure, sure. No, no, no, no. I get you that, but I guess my question is the presumption here is not that the disease exists. It's that the disease is connected to service, right? No, Your Honor, that is presumption. This is the problem that I have with your argument because this is a presumption. This is the plain language of the statute, right? A says for the purposes of Section 1110, and then it goes through, and we're talking about, I guess, well, one of those. Are we talking about A-1? Yes, Your Honor. We're talking about A-1. And then at the end, it said, it shall be considered to have been incurred or aggravated by service. So, it's a presumption of one of those diseases or conditions being connected to service. It doesn't say that the disease itself is presumed to exist just by the mere existence of the medical record. I respectfully disagree, Your Honor. Well, then where in the plain language of that statute does it say that just mere submission of a single evidentiary piece of evidence that the disease is presumed to have occurred? Isn't that a condition predicate for the presumption applying? No, Your Honor, because in this case, it only pertains to diseases which are present to a degree of 10% disability post-service. In this case, as opposed to the condition of 1110... So, you get the presumption of the service connection. Yes, Your Honor. And the undisputed facts in this case prove that. He was hospitalized for a psychosis. But that's the problem. The undisputed facts do not prove that. The board found that the undisputed facts did not prove that. The board found that the facts were in dispute and found against your client. That may have been wrong, but that's a factual question that was for the board to decide, isn't it? No, Your Honor, it was not. It was a legal question based upon whether or not there was evidence of a chronic disease, in this case a psychosis, and a psychosis that had manifested to a degree of 10% disability following service. By the nature of his hospitalization for more than 21 days, under VA regulations, a condition is considered totally disabling, obviously more than 10%, for that period of hospitalization. As a consequence, we have met all of the factual predicates to trigger this presumption. And this presumption, different from the 105A presumption of service connection for a disease or injury present in service, this is a disease or injury that is present post-service and has manifested a disability to a degree of more than 10%. Okay. Mr. Kovner, let me try one more time and let me see if I've got your argument. I think I do. Your position is that if the veteran submits evidence of a chronic disease becoming manifest to 10%, that this regulation then puts the burden to the VA to disprove that underlying condition. That's a presumption of disability once evidence is submitted. That is correct, Your Honor, other than the fact that this is a statute and not a regulation. There is a regulation that implements the statute, but this is a statute created by which manifests itself as a result of a chronic disease at a rating of 10% or more post-service. And your view is that the presumption is not just for service connection, but a presumption that the disease occurred if any kind of like prima facie evidence is presented? Yes, Your Honor, because of the very wording of the statute. If we disagree with your reading of the statute and find that this is simply a presumption of service connection statute, and that in order to gain the presumption, you still have to prove the predicate underlying fact of the chronic disease, then where are we in this case? Because the board looked at the evidence and found that the evidence didn't support a finding of a chronic disease. Is that not unrevealable now in a Q case? I don't believe so, Your Honor, because even if the court were to make that determination, the Veterans Court in this case did not address that issue. The Veterans Court presumed that my interpretation was correct and said even if it was correct that this would have been a harmless error. Therefore, remand is required by this court if the court adopts that interpretation to send it back to the Veterans Court to make that determination in the first instance based upon whether or not there is an adequate statement of reasons or bases by the board to support that determination. Mr. Carpenter, your reference to the harmless error determination by the appellate court raises the question in my mind as to whether, given the case law in our court saying that harmless error determinations are not reviewable by this court under 7292, whether this is a case in which there is no jurisdiction in our court because of the way that the Veterans Court decided the case, that is to say, on the basis of a harmless error ruling. Well, Your Honor, the problem with that, with the decision made below, is that the decision made below was predicated upon a, I guess, judicial concession that even assuming that the interpretation or the allegation or vermin of error by Mr. Beck in his briefing was correct, that that would have been a harmless error. Right. The problem is that there was no analysis by the Veterans Court as to why that should be presumed. I'm sorry, Your Honor. The question that I have is, since the jurisdictional provision requires an issue of law on which the Court of Appeals for Veterans Claims based its decision, here the Court of Appeals for Veterans Claims appears to have based its decision on the determination of harmless error without reaching the question of law that we've been discussing, the scope of Section 1112. Isn't that right? Well, no, I don't think it's right, because the court expressly said that they were assuming that the decision or the vermin of error was correct. Which is another way of saying, is it not another way of saying that we don't have to decide whether it's correct or not? We will assume that it's correct, and then we will rule on a different ground to which it's harmless error. And that is correct, Your Honor. And that's why the challenge here is whether or not the Veterans Court relied upon a misinterpretation. And an interpretation that requires the finding, the predicate for the cue, and I realize I'm going over my time, is that there would not have been a manifestly different outcome. There would have been a manifestly different outcome under the correct interpretation. Therefore, a question of law is being presented in this case, which is critical for this court to address, because as Judge Hughes indicated, if my interpretation is correct, then as a matter of fact, Beck was entitled, and the original adjudication, to an award of service-connected compensation without having to demonstrate anything more than there was medical evidence of an identified chronic disease that had manifested to a degree of 10% or more. Mr. Carpenter, this is Judge Toronto. Do you dispute that even if your view of 1112 is right, that 1113 allows a rebuttal to the premise that you say triggers 1112? To the extent that you are suggesting that 1113 applies, I agree. There is nothing in this record, either in the original adjudication or in the review of the request for revision by Mr. Beck, in the board's decision denying that revision, in which there was any suggestion that the presumption had been rebutted. Therefore, the presumption stands because there is no proffer by the government that they rebutted the presumption based upon the criteria set out in 1113. And the criteria set out in 1113 specifically makes reference to the evidence necessary to make that rebuttal. And I'm sorry, I've misplaced my note on what that criteria is, but there is very specific criteria in that. I'll cover that on my rebuttal. Okay. You'll have your rebuttal time. I think we'll hear from Ms. Rose now. Thank you. Good morning, Your Honors. May it please the Court. The 1989 board reviewed the evidence that was in the record according to its ability to discount the weight and probability, excuse me, probity of evidence in light of its own inherent characteristics and its relationship to the other items of evidence. And here, what the board determined was that although there was an initial stay at a private facility that indicated a diagnosis of schizophrenia, when Mr. Beck was transferred to the same day as his discharge from that hospital to a VA hospital, the diagnosis was not substantiated. Following his hospital stay at the VA facility, he was readmitted to the original private facility within, I think, within less than two weeks. And again, there was no confirmation of the initial diagnosis of schizophrenia. Instead, at the second stay, he was found to have a personality disturbance that was, I think, labeled as antisocial disorder and drug addiction. Because this is Q, the mixed evidence here means that we cannot review whether or not the board erred in determining that the complete evidence of record did not show a manifestation of schizophrenia within a year following discharge. And secondarily, the Veterans' Court correctly held that it must take account of the rule of prejudicial error if it were to have found that the presumption should have applied. And there was no argument made that the, or showing made, that the mixed evidence in the record would be legally insufficient to meet. Ms. Rose, this is Judge Bryson. Let me ask you the same question that I asked Mr. Carpenter. Given that the Veterans' Court did not decide the question of the scope of Section 1112, but instead said, even assuming that the appellant's position on that was correct, there was still no error, because there was harmless error, it was harmless, why is there jurisdiction in our court to decide that, given the cases in which we have held that determinations of harmless error by the Veterans' Court are not reviewable under 7292? I think, Your Honor, and I recognize that we didn't make this argument. I know, and I was curious about that. I can only describe that as an oversight, but the way that the Veterans' Court structured its decision, I agree with Your Honor that there would not be jurisdiction. Well, I'm just asking, I'm not sure that I've come to a conclusion. Potentially, the appellant could try to make some sort of argument about what the scope of review of prejudicial error looks like, where there's a rebuttable presumption, and that could be reviewable, like this court looked at in the Simmons decision earlier this year, but I think there is... This is Judge Taranto. I guess, I think I was hearing Mr. Carpenter suggest that, in this case, the harmless error analysis of the Veterans' Court was itself infected by a legal error, and that the merits of that contention, that the harmless error analysis rested on a legal error, required consideration of just how, I'm going to call it, minimal the showing is that's needed to trigger 1112, because I think Mr. Carpenter said, on his view, there could not possibly be harmless error, since the evidence required to trigger 1112 couldn't possibly be harmless. It couldn't possibly have been rebutted. Well, I actually think that Mr. Carpenter is arguing something slightly different. He's not making an argument about whether or not the mixed evidence in the record could rebut the presumption. Instead, he's invoking a hyper-technical argument that's in the vein of head by win, tail by lose, which is, unless the board specifically states that the presumption has been applied, the board cannot find that the evidence of the board, the evidence before the board cannot rebut the presumption. It's an argument that, unless a presumption is first applied, it cannot be rebutted, which is incorrect. Here, the harmless error determination would need to be based on all of the evidence in the record. Ms. Rose, this is Judge Hughes. Can I ask? So, just assuming, for hypothetical purposes, we agree with Mr. Carpenter that there's sufficient evidence in the record to invoke the presumption, you still get a rebutted under 1113, right? Correct. What's this? I've read 1113. I have it before me. It's a little unclear. What standard of proof does the VA have to meet to rebut that presumption? Is it simply a preponderance, or is it a heightened standard like you often have for rebutting presumptions? This is not a presumption where there's a heightened standard of rebuttal, and it's addressed in the regulation at 3.307. The expression, affirmative evidence to the contrary, will not be taken to require a conclusive showing, but such a showing as would, in sound medical reasoning and in the consideration of all evidence of record, support a conclusion that the disease was not incurred in service. So, you essentially have a primifacious showing, one that would support a judgment in your favor. I apologize, Your Honor. I didn't hear the first part of your question. I'm sorry. The standard, as I understand it, coming from the regulation, is that there has to be what would amount to a primifacious showing, enough evidence that, if unrebutted, would support the agency's position in order to rebut the presumption. That's what I think I understood. I want to make sure that, is your question addressed to what evidence is required to invoke the rebuttal? The rebuttal, yes. In order to satisfy the requirement of Section 1113 regarding rebuttal evidence, as described in Section 307. It would need to be evidence that would be sufficient to support a conclusion that the disease was not incurred in service. So, if the presumption is triggered and there's no evidence to the contrary, clearly that would be a situation where there's no rebuttal. The degree of evidence that would need to be, I mean, the exact degree, it needs to at least lead to the conclusion in medical reasoning and consideration of all evidence of record that the disease was not incurred in service. And your view is that... No, go ahead, Judge Sharma. No, no, no. Go ahead, please. I was just going to confirm, your view is that there's sufficient evidence in the record to support a finding that the presumption would have been rebutted as the Veterans Court found, and that particularly on a Q challenge, that that's not something either the Veterans Court or we could get into. Yes. The board's decision, which is this discussion I think is at page 30 of the record, it weighs all of the evidence in the record relating to Mr. Beck's hospitalizations that happened close in time after his discharge, and it determined that on the whole, that evidence did not indicate that he had manifest schizophrenia within a year after discharge. So, although the board did that weighing as an initial matter to determine whether or not the presumption was triggered, I think that its analysis is equally relevant to whether or not the error was undebatable in a harmless error analysis. And as you've mentioned, because this is Q, there's no undebatable error here. This is Judge Taranto. So, can I just return to this jurisdiction question, just to make sure I understand your position? Is it now your position that we do not have jurisdiction to reach the 1112 interpretation question? To reach the 1112 interpretation question, that is fair. I do agree that the challenge to the harmless error analysis was framed as a legal question. I'm sorry. You said the challenge to the harmless error was, what did you say? I missed it. I believe it was framed as a legal question as to what evidence or how the presumption once triggered should be reviewed as whether or not it was debatable in the two contexts. So, that would give us jurisdiction. Yes. To address 1112, even if it was somehow through the back door of an alleged incorrect legal premise underlying the harmless error analysis. Yes, Your Honor. I apologize. I've been thinking through this jurisdictional question as we've been speaking, and I do believe that Mr. Beck, in his opening brief, raised a legal question that would allow the court to analyze these issues, and because the court affirmed judgments and not decisions, and if it wanted to do so on the basis of the interpretation of 1112, I believe it could do so. I'm sorry. I'm a little confused now. What's the legal question, apart from this underlying statutory interpretation question, about harmless error that you think we have jurisdiction to review beyond the... Because it seemed to me that the Veterans Court said, whatever the interpretation, there's enough evidence here to rebut this, and so it would be harmless under the Pew standard. What legal issue of harmless error do we have? I don't want to misstate Mr. Beck's argument. Well, I understand, but... In the opening brief... I'm sorry, Your Honor. I just want to understand the government's position, because this seems like a case, and I was a little surprised when I read the brief, that the government would have come in and argued the court doesn't have jurisdiction because this is based upon a harmless error analysis that is entirely fact-based, and it's undisputed. We don't have jurisdiction over the factual harmless error analysis. So what legal content is there to the harmless error ruling, apart from the statutory interpretation question? Or do you think those two are the same thing here, somehow? No. I believe that Mr. Beck was making an argument, and we disagree with this, that if the original board does not invoke the presumption, there is basically automatically a prejudicial error because the presumption cannot be rebutted if it's not first invoked. We don't agree with that, and I think we've addressed that in our brief, but that is... But that's not what the Veterans Court decided, and that's not how it rules on harmless error, is it? That is not what the Veterans Court decided. Mr. Beck, I believe, is contending that that should be the case. That was a legal error. Okay. Do you have anything else, Ms. Rose? No, Your Honor. I don't know if the Court has no further questions as we rest on the arguments made today in our brief. Thank you. Mr. Carpenter, I think you have five minutes. Thank you very much, Your Honor. I'd like to begin with the language of 1113, and I agree with Judge Hughes' observation that it is very difficult to suss out from the language used by Congress what the legal standard is to rebut the presumption. I'm sorry, but this is Judge Rutter, but the regulation provides at least different words, seemingly familiar words. Just about to go there, Your Honor. Number one, the government did not assert the language in the regulation in its briefing, so they are raising an argument that was not raised in their briefing. But more importantly, the reliance upon the regulation, even if permissible, is not supportive of the government's position for two reasons. The first is that the language used in the regulation specifically refers to the question of whether something was incurred in service. The question under 1112A1 is whether or not something occurred within a post-service presumptive period. It is not whether something took place during service. And therefore, any language in the regulation would not have application to this particular statute. More importantly, on the question of what the legal standard is and whether it is as low as the Secretary has written in his regulation, that cannot be supported because this regulation And more importantly, in the context of the presumption of aggravation under 38 U.S.C. 1153, the VA has interpreted that statute by regulation to have the higher burden of clear and unmistakable evidence to rebut that presumption. Mr. Carman, can you shed some further light on this jurisdictional question that we've been discussing? And in particular, why this isn't a case in which the Veterans Court decision relies entirely on a fact-based harmless error analysis without any kind of legal error in the picture? Well, I do not believe that the Veterans Court made any factual determination whatsoever in its harmless error analysis. It simply made reference to the Q standard for manifestly different outcome without any further statement. And to read into that that there was some factual determination made by the Veterans Court is simply over generous. What the Veterans Court in fact said was, is that assuming that the interpretation proffered by Mr. Beck and the averment of error in the board's decision was correct, the error was harmless. That's the end of the discussion. There was no factual predicate upon which that was based. At best, it was a reference to the Q standard without any further elaboration. And as was suggested earlier in the colloquy with the government, Mr. Beck's position is that the harmless error analysis was tainted by the reliance upon a misinterpretation of the plain language of 1112, which does not carry with it any language that would suggest that there is the level of ability to contest a diagnosis of record of a chronic disease. And then the question becomes, was that chronic disease manifest at a degree of 10% or more, and by his period of hospitalization for more than 21 days with a diagnosis of schizophrenia, that meets the predicate requirement to trigger the statute. I see that I'm out of time. I will refrain from any further comment. Thank you, Mr. Harbert. Unless there's questions. Sorry. Any questions? Hearing none, the case will be submitted, and thanks to both counsel. Thank you, Your Honors.